UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00156-JAW |
| | ) | |
| MATTHEW AYOTTE | | |

**ORDER ON MOTION FOR RECOMMENDATION OF RELEASE TO HALFWAY HOUSE**

An individual facing a period of incarceration for violation of supervised release seeks a judicial recommendation to the United States Bureau of Prisons (BOP) that he be allowed to spend the last twelve months of his federal incarceration in a halfway house. Because the Court has been informed that the BOP has already approved the inmate to spend the last six months of his incarceration at a halfway house and the BOP decision is well within its discretion under 18 U.S.C. § 3621(b), the Court declines to make a recommendation and dismisses the motion without prejudice.

**I.  BACKGROUND**

On September 2, 2016, this Court sentenced Matthew Ayotte to twenty-four months of imprisonment for violation of the terms of his supervised release, to be served consecutively to sentences he received in state court. *J. in a Criminal Case* at 1, 3 (ECF No. 155).[1] The Court did not order supervised release to follow release from

---

[1] On May 10, 2019, Mr. Ayotte filed a motion with the Court seeking "consideration of placement and designation to the Pharos House in Portland, Maine . . .." *Mot. and Pet. for Consideration of Designation and Placement* at 3 (ECF No. 163). On September 27, 2019, the Court dismissed Mr. Ayotte's motion without prejudice as premature. *Order Denying Def.'s Mot. and Pet. for Consideration of Designation and Placement* (ECF No. 167).

his incarceration. *Id.* at 3. On February 20, 2020, Mr. Ayotte filed a motion with the Court seeking a judicial recommendation that he be allowed to spend the last twelve months of his federal incarceration in a halfway house. *Mot. for Recommendation of Release to Halfway House* (ECF No. 169) (*Def.'s Mot.*). On March 16, 2020, the Government filed a response opposing Mr. Ayotte's motion. *Gov't's Resp. in Opp'n to Def.'s Mot. for Recommendation of Release to Halfway House* (ECF No. 171) (*Gov't's Opp'n*). On April 1, 2020, Mr. Ayotte filed a reply. *Def.'s Reply to Resp. to Gov't's Resp. in Opp'n to Def.'s Mot. for Recommendation of Release to Halfway House* (ECF No. 172) (*Def.'s Reply*).

## II. THE PARTIES' POSITIONS

### A. Matthew Ayotte's Motion

In his motion, Mr. Ayotte details the difficult time he has had in federal prison, beginning with his placement on a gang unit at the Brooklyn Federal Detention Center and his drug-addled cellmate, and continuing with his transfer to the United States Penitentiary in Tucson, Arizona. *Def.'s Mot.* at 1-2. His problems in Tucson included Tucson's transformation into a "special needs yard," his case manager's failure or refusal to process the paperwork for his release to a halfway house, his lack of eyeglasses, which were lost during the transfer from Brooklyn to Tucson, and his difficulties enrolling in classes at Rio Salado College. *Id.* at 2-3. Viewing the federal prison system as an "incubator[] of immorality" and in despair about the likelihood that he will become eligible for programs before his release, Mr. Ayotte asks the Court to release him to a halfway house to help "guarantee [his] successful reentry—in

2

which [he is] fully invested." *Id.* at 3-4. His release to a halfway house, he hopes, will prevent him from becoming a "victim of the ineptitude of the machine" and will allow him to leave behind the BOP, which he describes as "sinking in its own squalor." *Id.*

### B. The Government's Opposition

The Government begins by reciting Mr. Ayotte's background. After being indicted on September 22, 2011, *see Indictment* (ECF No. 30), Mr. Ayotte pleaded guilty on March 1, 2012 to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1) and § 924(e). *Gov't's Opp'n* at 1; *Min. Entry* (ECF No. 63). During his guilty plea hearing, Mr. Ayotte admitted that he had been previously convicted of nine felonies when he possessed the firearm. *Gov't's Opp'n* at 1-2; *Prosecution Version* (ECF No. 61). On November 23, 2013, the Court sentenced Mr. Ayotte to 120 months of incarceration, five years of supervised release, no fine and a $100 special assessment. *Gov't's Opp'n* at 2-3; *J.* (ECF No. 113). On September 30, 2015, after the United States Supreme Court issued *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Court granted Mr. Ayotte's motion to correct sentence and resentenced him to fifty-eight months of incarceration, three years of supervised release, and the $100 special assessment. *Gov't's Opp'n* at 3; *Am. J.* (ECF No. 132).

Mr. Ayotte began supervised release on October 7, 2015. *Gov't's Opp'n* at 3. On February 8, 2016, the United States Probation Office (PO) initiated a petition for revocation of supervised release, alleging three violations of the terms of his supervised release, including his arrest for domestic violence assault, his failure to comply with the drug and alcohol condition, and his associating with an individual

3

who had been drinking. *Gov't's Opp'n* at 3-4; *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 138). On September 2, 2016, the Court sentenced Mr. Ayotte to two years of incarceration with a credit for forty-seven days of overserved time to be served consecutively to the sentence to be imposed on the new state conviction with no term of supervised release to follow. Gov't's Opp'n at 4; *J.* at 3 (ECF No. 155). The Government also notes that Mr. Ayotte filed a similar motion that the Court dismissed as premature. *Gov't's Opp'n* at 4.

Having described this background, the Government turns to the legal issues Mr. Ayotte's motion presents. First, the Government claims that Mr. Ayotte's petition may still be premature. *Id.* at 5. The Government explains that, according to the BOP, Mr. Ayotte's release date is April 3, 2021, and according to the Government, the twelve-month reference in 18 U.S.C. § 3624(c)(1) and in 28 C.F.R. § 570.21(a) is to the BOP designation, not a defendant's early release date. *Id.* Therefore, under the Government's view, Mr. Ayotte's motion will be premature until he is released. *Id.*

Next, the Government stresses that the BOP, not this Court, has the statutory authority to release an inmate to a halfway house under § 3624(c)(1) and in so doing, it applies the criteria in § 3621(b). *Id.* at 5-6. Although the BOP takes into consideration any judicial recommendations, the Government argues that the Court must make those recommendations at the time of the sentencing hearing, otherwise the Court would have to amend its sentencing judgment, which a court is restricted

4

from doing. *Id.* at 7-9. Finally, the Government contends that even if the Court could make such a recommendation, it should not do so in Mr. Ayotte's case. *Id.* at 9.

### C. Matthew Ayotte's Reply

In his reply, Mr. Ayotte emphasizes the seriousness with which he took the Court's words at the sentencing hearing and his efforts to rehabilitate himself over the course of his incarcerations. *Def.'s Reply* at 1-2. He asks the Court to make the recommendation "on the merits of [his] present engagement in rehabilitative initiatives chosen by [him] for [his] well-being but for the benefit of the world and community [he] hope[s] to reenter in a service-oriented capacity . . .." *Id.* at 2. Mr. Ayotte says that "[u]nfortunately, the Government's focus is on the past and not the present." *Id.* at 3. He stresses that he just wants "to get to work, go back to school, and live and breathe [my] freedom-hard won." *Id.* at 4.

## III. DISCUSSION

Rather than address the legal objections the Government raised about the timeliness of the motion and the authority of a sentencing court to amend a sentencing judgment, the Court turns to whether it would recommend to the BOP that Mr. Ayotte be allowed to serve some portion of his remaining twelve months of federal incarceration in a halfway house. Following Mr. Ayotte's motion, the Court requested the PO to investigate the status of Mr. Ayotte's request for residential reentry center placement and the PO informed the Court that BOP has approved Mr. Ayotte for a six-month term at a halfway house. Assuming this is correct, the Court would not disturb the BOP determination. The maximum amount of time Mr. Ayotte

5

could serve at a halfway house is one-year and the Court concludes that a six-month term falls well within BOP discretion applying the multiple factors in 18 U.S.C. § 3621(b). Accordingly, the Court will dismiss the petition without prejudice. If Mr. Ayotte wishes to bring it again, he is free to do so.

The Court adds that it is encouraged by Mr. Ayotte's progress and sincerely hopes that when he obtains his freedom, he will also free himself from drugs and alcohol and the ruinous consequences of his occasionally violent temper. As the Court said to Mr. Ayotte, he has much to give to others but only if he learns to discipline himself and to channel his abilities constructively for the benefit of himself and others.

## IV. CONCLUSION

The Court DISMISSES without prejudice Matthew Ayotte's Motion for Recommendation of Release to Halfway House (ECF No. 169).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of April, 2020